Good morning. I'm David Huskey, Deputy County Counsel for the Placer County Counsel's Office, representing the appellants. This case is here on an interlocutory appeal from the denial of a motion for summary judgment by the appellants, raising the issue of qualified immunity of good faith. The primary issue, I think, on this appeal has to do with the judicial deception claim made by the Baldwins. The Baldwins have focused primarily on the alleged deceptions. The judge denied the motion for summary judgment, saying there were too many factual disputes for the court to be able to determine the issues. To try to obviate those disputes, the officers took the position, for purposes of the motion for summary judgment and for purposes of this appeal, that Plano's position is correct. You couldn't help stating the opposite once in a while. I'm sorry? I said you kind of couldn't help disputing the facts once in a while, though. But let's assume you admit it all, as they put it. Yes. Even though your brief departs from that. Your Honor, the brief, I did say. I think I was trying to find out what the factual dispute was. You couldn't help yourself. Yes. But for purposes of the motion for summary judgment and appeal, we're accepting that there was not fresh green marijuana freshly cut from mature marijuana. And there were guns at their heads. Yes. If I could address first the judicial deception before we get to excessive force. The – on the judicial deception claim, the – The deception is about the garden hoses, right? Yes. Whether they're indoor or outdoor. So you take that out. Take that out, and what you're left with is .08 grams of dried, partially burnt marijuana. Somebody came along and dropped a couple of cigarette butts in the trash can when it was sitting outside. That's enough for probable cause? Well, according to the Eighth Circuit, there was a case that I cited, I think it was Briscoe, that seeds and stems stand-alone evidence was sufficient for probable cause for a residential search. There were more seeds and stems in that case, but they're the same potential issue. They were in an outdoor trash can? Yes. That was a garbage search, outdoor garbage search. The case that was cited by the Baldwins, the California case, Fine, actually did not resolve the issue of whether or not two seeds as stand-alone evidence would be sufficient for probable cause to search to believe that contraband could be found in the residence. That case involved officers who were in a – in the home looking at the seeds and whether that was sufficient to make an arrest of the person. And actually, the Court specifically reserved the question as to whether or not had they sought a warrant for a search that would have been sufficient probable cause. But in addition to the evidence of the garbage search, there is also the confidential informant statement by a citizen informant. That did not give them any direction as to where there might be cultivation of marijuana, but I think it was very strong evidence that – or gave rise to a strong probability that the Baldwins were cultivating marijuana. And then the question became the location. And the garbage search, I think, provided probable cause to believe the location was the Baldwins' residence. There was a – the grow rock and the seed and the burnt marijuana that I believe could lead a reasonable officer to conclude that there is not. Kennedy. Is there some dispute over what that rock was? Yes. Mr. Baldwin contends that it's a lava rock. Well, isn't that – you accept that, then? Well, but lava rocks are used in this context for grow rocks. And the officer – Are they also used for anything else? Yes. They could be used as lava rocks. Well, I think you ought to accept his fact. A lava rock used for something else. Don't dispute it. I'm not disputing it, Your Honor. But you said it was a grow rock. That's disputing it. Well, it can be used for both. And that's – it is both. Well, but that isn't their position. Well, but the – I mean, you can argue the facts, but you're not supposed to argue the facts. Okay. The officer, in his experience, has seen such rocks, whether it's characterized as a lava rock or a grow rock, be used in indoor marijuana cultivation. So I'm not – I don't think the label makes that much difference. I think it's the type of rock. Well, isn't it critical in this case – don't we get to materiality, then? The thing that really tips the balance in probable cause favor is if, in fact, the irrigation equipment is for indoor use. Then that really – if there's anybody – you know, if the magistrate or the judge is looking at probable cause, isn't that going to be – wouldn't that materially have affected the decision? Your Honor, I look at it the other direction. If it was dropped out, I don't think it would affect probable cause. In fact, I think it – under these circumstances, I think the affidavit has to be looked at as if it were dropped out because of the dispute. You can't – I think that's under – because it's disputed, the characterization – I think that needs to be – I know it's out, but you're trying to argue that this – in effect, we can take these very ambiguous state of limited pieces of evidence and say that that would have sustained probable cause. Well, Your Honor, I viewed it as corroborative evidence. The main evidence, I thought, was the presence of the marijuana in the garbage. And again, I rely on the – But if you take – That goes with possession. Yeah. If you take that and go to a magistrate and say, we want to conduct a residential search because we found a rock and a seed, that's not probable cause for growing with intent to distribute. It may not be probable cause for growing. No, and it's – and you probably aren't going to search warrant for it either. Well, Your Honor, I guess looking at the Fine case, the Briscoe case, and I believe the – well, the Fine case and the Briscoe case mainly, I believe it is sufficient, relying on those two cases. But that also is not – How does Fine help you? Fine was where the California Supreme Court said that two burnt seeds were insufficient for an arrest. But it expressly preserved the issue of whether or not those seeds – whether a magistrate could have used the probable cause to search the residence. It did not say – did not say that it would be insufficient under those circumstances. No, but it didn't say it would. I'm sorry? It didn't say it would. No, it didn't. But it didn't. So this gets back to, I guess, my overarching concern. What the judge said in this case is there are too many genuine issues of material fact. We can't resolve them on qualified immunity at this stage. And that decision in and of itself is not appealable to us on an interlocutory basis. You can't say, no, there aren't, in fact, disputes of genuine issues. On the other hand, what you can appeal is to say, well, those – really, we concede all the points and everything should be resolved in favor of the plaintiff and we still win. But we're sort of caught in the morass, once you start looking at it, of getting back to unresolved factual issues, it seems to me. And that's something we can look at. I guess the bottom line position on this, as a matter of law, I believe that the stems, seeds – Right. You said the seeds support probable cause. Well, I did. You cite Fein, which doesn't reach the issue. Well, and I also cite Briscoe. Yeah. Which seeds and stems did say that that was sufficient stand-alone evidence. Not in this circuit, right? I'm sorry? Not in this circuit. Okay. Okay. I'm sorry. No, no, no. Aren't you rather assuming that there's only any difference that the officers are lying? If you take the plaintiff's case, they're lying to get this warrant. And you can imagine that they might have gotten it without it, but in fact, if they lied and on that basis got it, why should we engage in the little exercise you suggest? They know they shouldn't lie. They know that's against the law to go in and swear to a false warrant. Absolutely, Your Honor. But the – So why should we – if plaintiffs can prove that, it seems to me that they've got a case. Because under Hervey v. Estes, it's a two-step process. They have to prove with substantial evidence the falsity of judicial deception, and the second step is materiality. And what I'm arguing is materiality. And they have to prove both to get a jury trial. And I don't think there needs to be a jury trial here to determine who's lying between the officer and Mr. Baldwin if Mr. Baldwin's evidence standing alone supports probable cause. Well, I'm just suggesting that it seems to me, as I think it seems to my colleagues, that there's enough ambiguity in this as to whether it's material or not. And you, of course, argue, well, you can construe it so it wasn't material, but a fair argument can probably be made that it was material. Also in this context, and I know it sounds strange given what you're pointing out, but you assume the officer lied, but it's an objective standard. And setting aside this officer's subjective state of mind, the question becomes, could an objectively reasonable officer have believed that the Baldwin's evidence standing alone provided probable cause? And I think for qualified immunity purposes, I think the answer is yes. I haven't addressed excessive force. Roberts. Now, go ahead. You can take some time on excessive force. All right. We'll give you a couple minutes and we'll add. On excessive force, Your Honor, let's start. Let's start first with Officer Reed. The difference between this case and the cases where brandishing a gun and pointing the gun and putting the gun to someone's head has been found to be excessive force, or at least qualified immunity denied, is the time at which it occurred and the circumstances. This was the entry into a home to perform a drug search. No one had been secured. No one had been located. This was the force was alleged before the initial handcuffing. And the Robinson v. County of Sonoma case involved a situation where I thought I believe the facts showed less justification for use of force. In that case, the facts were the officer pointed the gun three feet away from Mr. Robinson's head. Well, now, you will agree that this was a battery when you put a gun to someone's  Yes. It's very different from an assault. It would be a pointing of a gun. Well, the dissent in Robinson was making that distinction. The majority didn't seem to think that mattered as much. Do you know the opinion of Judge Kennedy as he then was in Brossard against Hagan? I'm sorry? Have you come across Brossard against Hagan? Yes. I sent a letter to the Court about that. And you know how Judge Kennedy ruled on that? I'm familiar with the case. I don't remember which way the judges. I may be citing the wrong case to you. I think I am. I want to cite McKenzie. Oh, McKenzie. McKenzie is the one I have in mind where Judge Kennedy, then a member of this court, held that a battery like putting a gun to a head was actionable. It was illegal. And I believe in that case the – and there were several cases, but I think I canvassed them all. The distinction in all the cases was either the person was not a suspect at all, so there's no justification, or a child where there was no evidence, you know, of resistance, or the people were already in custody, handcuffed, and then excessive gunplay. Here, the point is that this is the most exigent time for an officer. I think this case – He goes into a dentist's house. He's found a seed. He's found one seed in the garbage and a rock. He goes in the house of a dentist, puts a gun to his head. His wife is barely clothed. You know, I mean, if you accept their facts, and I know you don't want to, but if you accept the facts as they've asserted, it seems a little excessive to me. Your Honor, I think that is their facts. And that's fine. But they're also – it's undisputed that they were doing a drug search. I think drug searches inherently carry some risk to the officers, which is why they're allowed to draw their guns in the first place. The house – it's undisputed the house had not been cleared. That is, no – the people hadn't been secured. This was the very first encounter. And by Dr. Baldwin's own account, nothing else happened. There was – it was ordered to the ground, 20 or 30 seconds with a gun to the head, handcuffed. 20 to 30 seconds with a gun to his head? Do you know how long 20 to 30 seconds is? How long? I wrote an opinion that gave the cops permission to come into a house after knocking and waiting 15 seconds, and the Supreme Court adopted that as a very long time. So double that. And having a gun pointed at your head for 20 to 30 seconds is a long, long time. With lots of opportunity for the gun to go off. I would just submit, Your Honor, that in Robinson v. County of Solano, where they found a Fourth Amendment violation that found that the officers were entitled to the qualified immunity of good faith because of the state of the case law. Right. But here we have McKenzie already saying it's unconstitutional to put a gun to a person's head. But McKenzie involved – the timing was different. McKenzie involved – and again, there's a – Well, I don't think much is made of it. It's true. They handcuffed him and then put the gun. I think that's a huge difference, Your Honor. I mean, I think once someone's handcuffed, there's no justification whatsoever. But until they're handcuffed, they're not secured. And I think that's a huge line between this case and that case and the cases of its ilk. So was he – you contend that he was – did something that justified a gun to the head? Was he resisting in any way? No. There's – I'm accepting their – our fact is it didn't happen. But accepting their facts, no. I mean, it's just – A drug search is inherently dangerous. There are likely to be guns, even if it's a dentist growing it at home cultivation, which is legal in California. At that time, it wasn't presumed to be legal in California. The case law at that time presumed to be illegal. Okay. And also, I think that seriously downplays the nature of drug searches. I mean, there are – No, I'm not trying to downplay. But they – in this case, it's fact-specific. And you're sort of drawing a broad sweep that, as you said, this is a drug search, okay? The implication is all drug searches, therefore, justify putting guns to the head of any suspect, no matter what. Because as long as it's on entry, cops are at risk, it's a drug search, ergo, gun to the head is okay. That's what you're looking for. I would say that in terms of decided case law on this issue, the law was not clear. And that's why the Brussaux v. Haugen case, which was a recent Supreme Court case on qualified immunity, said unless it's an obvious case of excessive force, you have to look very closely at the decisional law prior to it. Prior to the act. Let me interrupt and return to Judge Fischer's point. Why isn't it relevant in that calculus that they were – that this is a medical marijuana issue? It's not a cartel issue. You're not going into the headquarters of an alleged drug ringleader. You're saying, I think, that any time, whether it's a grow operation or whether it's a one-seed possession case, that you're entitled to draw guns, put them to their heads. I mean, right? Isn't that what you're asking? Your Honor, you may be right, but I'm just saying. To a certain extent, I am. But I think in the facts of this case, the officers have no pre-knowledge that this is a medical marijuana case. When they come in, before they handcuff, all they believe is that it's a regular marijuana case. The medical marijuana doesn't come up until after the force is used. And – Well, they're saying at the time, check with your – check with the authorities. They're saying right during the search, right? They allege that. Okay. I know you want to dispute the facts, but – Even if they do, Your Honor, I don't think it's reasonable to expect an officer, for officer safety reasons, to handle it differently than it would handle any other drug search until everybody's secured. I think that's a huge demarcation. Do you not see the distinction between actually putting a gun to somebody's head and having a gun drawn? I do. But I don't see the distinction between putting the gun to the back of the head and pointing it three feet away from the front of the head as in Robinson. I don't think there's a substantial distinction in that. All right. And that's a – It's the same risk. If the gun goes off, you're shot in the head. And, you know, that – so I really don't think – But one is – I think it's what Judge Newton's point is. One is an assault. The other is a battery. There's quite a big difference with that. Well, I think in some cases, assaults can be worse than batteries. One, you're seeing the gun three feet from you in front of your eyes. I really don't see how that's a significant distinction constitutionally for these officers in terms of qualified immunity of good faith. All right. Well, we understand your position. Thank you. And we'll hear from the other side. We'll give you a couple of minutes for rebuttal. Thank you very much. Good morning, Your Honors. J. David Nick on behalf of Dr. Michael Baldwin and George Chaco. Your Honors, I'd like to start off where the Court left off with the excessive force. It seems like the appellants here are arguing for a per se rule. And I wanted to take up on this mention that the Court had made about a case where the Supreme Court articulated that 15 seconds was too long for a knock and notice situation. I think that that leads me to the next point that I'm going to say, is to adopt that rule would require this Court to break a long chain of precedent by the U.S. Supreme Court where they have repeatedly said there is no per se rule in the execution of a search warrant where everybody in the house is going to be considered dangerous. And that is the problematic aspect of this case. Secondly, under the new precedent, evaluating whether there is or there isn't qualified immunity under those circumstances, we take into account the seriousness of the offense. And while they didn't know whether it was a medical marijuana situation or not, at that point there was a statute that declared under certain circumstances it's unlawful, under others it's not. And what that, in essence, leaves the officers in a precipice where it might not even be illegal what's going on, and on the other hand, it might be a felony, which leads me to the next point of the seriousness of marijuana in California. The State has taken and adopted a policy extending back to the early 70s of looking at marijuana as one of the lowest levels of felonies in the State. It has no weight enhancements in any of the health and safety code. It has the lowest prison term that could possibly be provided. And yet, it also has a certain clauses for situations where even possessors are treated, just like as a fine penalty, just as under Federal law. This crime is certainly not as serious as the appellants want to put it. Kennedy, Well, in fairness, though, to the police on the scene, they don't know whether this is the benign medical marijuana or the private consumption, regardless of medical usage, or that they've got a circumstance where they have somebody who thinks they've got a good deal going here and is a professional distributor. Now, they've got the notion the guy's a dentist, and there's that. But when they walk in that door, they can't walk in assuming they're dealing with, you know, Dick and Jane at home. They have to assume the worst, or at least assume the worst within reason. It seems to me that's the play there. There's no per se rule that you can use guns against the head in all cases, nor is there a per se rule that the police can't draw their guns or use some restraining force until they stabilize a house. No, and I agree with the Court. They're given quite a bit of latitude to take control of the situation, handcuff people, sit them down. They are certainly entitled to have control over the situation. But what the precedents that are cited in these briefs make it clear is that in doing so, they may not unreasonably terrorize the people who they're doing it to. And here, the salient fact of this summary judgment motion, it isn't just the facts that are pled. It's the implied facts. In other words, what you imply out of those facts. And I think that the picture that is drawn here by the Baldwins is that you have a band of terrorizing police officers coming in and acting completely beyond what was necessary in order to take control of the situation. Well, let's take that one bit at a time. They had the right to the search warrant. They had the right to come in at that point. They had a right to secure the premises, the right to make sure that, and Congress has found that drugs are connected with guns and weapons. And we understand that in many circumstances there's a safety issue. So, so far, so good. They draw their weapon. So far, so good. Where does it become excessive in your view? I think the point that it becomes excessive, Your Honor, is when Georgia Chaco is coming out of her bedroom dressed in the way that the record shows that she's dressed. She is not in any way threatening the officer. And they start, in essence, she's submitting to their authority. The first act by Officer Potter is to take his finger and to poke this woman six or seven times in the neck to drive her back into the room, supposedly, according to the appellant, because that's going to facilitate them taking control of the situation by protecting the officer from some unknown person that's in that bedroom. How does that conduct in any way secure the officer's safety? It's an excessive act beyond anything that's necessary. Then, as if that's not enough, after poking the woman, he's got a gun drawn and trained on her head, asking her to lie down on the ground in the way that she is. And then you have to also, in order to take part or to understand the state of mind of Officer Potter, you have to look at the conduct that he participated in immediately after he had secured her. And the record is clear. I don't need to repeat what it is. But there were some certain looks that he provided to this woman. Now, the excessiveness of it all, Your Honors, is that circumstance. You've gone way beyond anything that was necessary in order to secure the situation. With Dr. Baldwin, on the other hand, Your Honors, I wanted to point out one aspect that the Court had asked. There is a difference between the assault and the battery. And even the dissent in the ---- Robertson. Yes. It took the position that, hey, those are the cases that we should address as unreasonable use of force. But there's one aspect of danger that's involved in placing a weapon on the back of a citizen's head, and that's that the law enforcement officer has lost complete control over the possibility of an accidental discharge. A reflexive movement by the head. That's all you need. Boom. There goes the gun. Person's dead. And this is just completely unnecessary for this type of a case. On the issue of ---- How do you respond to the argument that there's a distinction between cases in which a suspect has been handcuffed and otherwise restrained and cases that the suspect has not? Yes. And I think, really, what it ---- what we need to do, according to the U.S. Supreme Court's edict in this area, is we have to look at the totality of the circumstances. I don't think that we can sit there and say, well, this person is committing this kind of crime, that person is committing that kind of crime, this person's handcuffed, this person is not. It's really what do the circumstances require or would reasonably allow a police officer to do. And there is absolutely just nothing in this record, when looked at in light of a summary judgment situation, that in any way justifies that conduct. So whether you ---- Is there any evidence in the record from any police experts as to whether this was an out-of-policy or, you know, either specifically or generally in the opinion of other police experts as to whether the approach to Dr. Baldwin was excessive? There is not. There is not. And I'm sure that for, you know, if the Court were to remand the case back to the district court, that would be something that would occur down the road. And it ---- obviously, if you have a situation here where Dr. Baldwin is lying prone, there is no more danger. What about on the judicial deception? With the judicial deceptions, Your Honor, I think there's one aspect that I want to point out to the Court, which is the ---- it appears to be the centerpiece of the appellant's argument. They want this Court to extend immunity beyond what the law currently provides. And what they want is a situation where if the officer says, well, you know, I'm going to keep the truth out and I'm going to put some lies in because I believe that even if I put the truth in, I'd still be able to get the search warrant. And clearly, the cases that are cited in these briefs show that once you've shown deception, that's the end of it as far as immunity goes. The only issue for summary judgment really here is their immunity, not whether we've reached materiality. Materiality is an issue for the district court. They're not allowed to appeal the materiality of this. They're only allowed to appeal whether they were entitled to qualified immunity. So the district court has made a decision on materiality, which at this point is non-appealable. Nevertheless, the materiality issue here is pretty clear. You have an ancient confidential informant, citizen informant. In other words, it's 60 days, I believe. It's so stale that it smells like cheese. And then on top of that, you have a police officer telling a magistrate, oh, we found indoor growing equipment of the rain drip and what have not, where the packaging in and of itself is showing that it's for an outside irrigation system. You have an officer using this word called a grow rock. He obviously selected that word for the effect that it would have on the magistrate. Had he said it was a lava rock that could or could not be used in that circumstance, it also would be a different scenario. And last but not least, what you have is .08 grams of burnt marijuana inside of a tissue paper with carbon, in other words, the residue of burnt material. I think this Court aptly pointed out that the circumstances under which that could occur are so broad and so applicable to innocent conduct that there is no way for any magistrate to have ever been able to say, yes, this is corroborative of probability. I understand it's probable cause, probability that there is illegal conduct occurring in this house. It could have been anything from the trash man putting it in there, a resident at the Baldwin's house having had smoked and put it in there, a party having had occurred two months before, and finally the maid gets there and empties the ashtray. I mean, the list is endless. This is why the ---- Well, I don't think it's endless. I think it's a small universe. Yes. I agree with that statement. I think in fairness, there would be many magistrates who would give a search warrant based on a C.I., even an aged, cheese-aged C.I. affidavit or comment, and some evidence from the garbage, even though it's not ---- It was a very specific tip. Here you had a C.I. saying he's probably growing. That was the most that they could say. It wasn't even like specific information. And in closing on that point, here, what in essence you have is the California Supreme Court, yes, it's in the context of an arrest, I understand that, but the law was clearly established at the time. And this is why they were using, and I'm talking about the Fine case, this is why the implied facts, again, show a deliberate attempt to deceive a magistrate knowing that they could not get the warrant otherwise, i.e., if we don't say it's fresh green cut or recently cut, we don't have anything to show that they're probably growing right now. And that is the essence of this warrants, or all these warrants that the record appears to have issued. And I think judicial deception for this stage, Your Honors, has clearly been shown. And I again ask the Court to focus on that aspect of qualified immunity, that in essence what they're really only allowed to appeal at this point is whether there was or there wasn't judicial deception established. If there is deception, they lose their qualified immunity. It's for the district court to determine at the first level whether there was or there wasn't materiality. Roberts. Thank you, counsel. I'll give you two minutes for rebuttal. Following up on the judicial deception issue, I think he's incorrect as a matter of law that it isn't the only issue, that it doesn't defeat qualified immunity if you find deception. Materiality is a legal issue for the court. It doesn't go to the jury. And that has to be decided as a matter of law. And if you have — I don't think — I think qualified immunity is set up so you don't have a jury trial to determine who is telling the truth unless — Yes, but hasn't the district court determined that whether or not it's material is a disputed issue of fact, so he can determine that? No. I don't think the Court reached the issue because he said — the Court said there were too many disputed facts to analyze it. Right. So how can we review that? By focusing on the facts that really are not disputed, their version. You know, if that were the case, you could never get review. I think his point is that materiality may be different from qualified immunity in terms of interlocutory — right to interlocutory appeal. Well, Your Honor, I believe under Hervey v. Estes, it is the two-step process to get to the jury. Materiality is part of that process. And it is a — Well, you can prove it's not material in the district court to the extent that there You're saying we should look at this. That's why I'm having a little trouble with the argument. We're supposed to put ourselves in the seat of the magistrate who issued the warrant and assume that it didn't have any effect on the judgment of issuing the warrant to have a representation that there was indoor equipment. And it seems to me that, if the magistrate judge was at all tipping, that that would have tipped toward the issuing the warrant. Now, you're saying, well, let's pretend that that wasn't there. And now we look at the what was there, and you're saying, well, it's just not clear that that wouldn't have — in fact, you seem to be saying it's clear that that would create probable cause or, at worst, that a reasonable police officer would think it would. I think it's a close call whether that would be the case. I would just point out the Devenpeck case that I cited to the Court in a letter. It was the Supreme Court case that talked about this sort of issue of the subjective — the subjective wrongdoing of the officer isn't relevant to the probable cause of termination. It was a different context. It wasn't in seeking a warrant. It had to do with the charge the officer brought based against the person who was arrested. But the Supreme Court said, you know, it's an — the officer's state of mind, whether or not he was making something up and trying to find charges later, doesn't matter if the facts establish probable cause for an offense. And I think it's a similar principle here, and that's what I'm trying to argue. I understand your point. As far as — Now, before you leave Hervey, though, Hervey was an appeal from a summary judgment granted in favor of the officer. So that was clearly a final judgment. Do you have a case in which a materiality was appealed on an interlocutory basis? Actually, yeah. I mean, I think Liston. Okay. I mean, I think, in fact, most of these cases, as I recall, the summary judgment was denied. I think in Liston — no, I'm — actually, I may be wrong about Liston. Liston was an appeal from summary judgment for the officers. Yeah. Anyway, go on to your second point. Okay. On excessive force, the one thing I think that's kind of gotten turned around here is, and I understand on summary judgment you take the facts from the plaintiff's perspective, that on qualified immunity, the analysis is from the perspective of an objectively reasonable officer, not from the perspective of an objectively reasonable suspect. So you have to basically put yourself in the shoes of the hypothetical objectively reasonable officer as to what's dangerous or not. Right. And then decide whether what he did was excessive or not. Right. And so an objectively reasonable officer who's performing a search for drugs — Can go in and put a gun to somebody's head and poke a woman in the throat. That's your rule. Right? That's what you're saying. What more is there in this case? Under clearly established law, I think he could, because, frankly, I think not a lot of force before everybody's secured. I'm just pointing out that I think this notion that they're dentists, they're not doing anything, an objectively reasonable officer doesn't know how anybody's going to react. It does. It does. Our cases do often, the jurisprudence does take into account the status and nature of the defendant. Yes. But there was a hundred plans here. Or the accused. There was a hundred plans here. So even the notion of this was just medical marijuana was somewhat questionable. Okay. Thank you. Thank you very much for your argument. The case just heard will be submitted and we will be in recess for the morning. Thank you both for the argument. Yes. Very good. Good argument. Thank you. All rise. This court is in recess. Thank you.
judges: Noonan, Thomas, Fisher